**Laura BODEN, et al., Plaintiffs,**

v.

**ANACONDA MINERALS CO., et al., Defendants.**

**No. C2–85–1307.**

United States District Court,
S.D. Ohio, E.D.

Feb. 5, 1990.

Mary Josephine Kilroy, Columbus, Ohio, for plaintiffs.

Catherine Adams, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This case is before the Court upon the motion of defendant, Anaconda Minerals Company, et al. (hereinafter "Anaconda") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Said motion was filed herein on April 29, 1988. Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, along with pendent state law claims. After review of the pleadings filed in this case, defendant's motion is granted in part and denied in part.

## FACTS

This Title VII case, with pendent state law claims, was originally brought against two management level employees at Anaconda Minerals, along with other corporate and individually named defendants. ANATEC was in the business of developing and selling computerized systems which controlled manufacturing processes. ANATEC was a wholly-owned subsidiary of Atlantic Richfield Company ("ARCO"). Anaconda Minerals Co. was a division of ARCO that oversaw the operation of ANATEC. Defendant Weideman was the President of ANATEC. Defendant Martiniski was the Employee Relations Representative. De-

fendant Hussey was the Productions Manager. Two other original individually named defendants were dismissed.

Plaintiff Boden is a female Mexican–American. Plaintiff Midkiff is a white male. Laura Boden is no longer a party to this motion, inasmuch as her claims against these parties have been resolved by settlement. Clayton Midkiff was originally hired by Copeland & Roland in 1978 as a Manufacturing Manager in Columbus, Ohio. Midkiff was subsequently transferred to Los Angeles and was working for the company known as IC Engineering. Both IC Engineering and Copeland & Roland were merged into ANATEC. Midkiff was then transferred back to Ohio in 1983, working in the customer services area.

Midkiff alleges that his discharge was the direct result of his advocacy of equal employment opportunities at ANATEC, to wit: he specifically was an advocate in the Laura Boden situation advocating against alleged disparate treatment toward based upon her sex and race. According to the plaintiff, he likewise was an advocate on numerous occasions for other equal employment opportunities and the disparate practices being used by ANATEC. Midkiff also desired to have ANATEC set up a separate and distinct Customer Service Department for which defendant claims he voiced his desire to manage.

Plaintiff's discharge was the direct result of a conversation that he had with a individual employee of ANATEC named Carol Sagun. According to the defendants, plaintiff after learning that there was not going to be separate Customer Service Department made threatening statements to Sagun about his intentions and displeasure toward other ANATEC employees. Sagun reported this conversation to Ken Meagher and therefrom the processes were starting leading to plaintiff's termination. Thereafter, other individuals at ANATEC were made aware of the reason(s) for plaintiff's termination. Plaintiff claims his discharge was the result of his advocacy for better employment practices at ANATEC, therefore a violation of Title VII. Defendants'

claim that his discharge was for his threats made to ANATEC employees.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), citing: *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. 477 U.S. at 252, 106 S.Ct. at 2512.

■ Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts* showing that there is a genuine issue for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (Emphasis Added). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

■ Defendants' first ground for summary judgment addresses the area of jurisdiction. 42 U.S.C. § 2000e–5(f)(1) requires a 90 day time frame for filing a civil claim after receipt of the right-to-sue letter. Defendant argue that since plaintiff's right-to-sue letter was not attached to the complaint, jurisdiction is lacking. Plaintiff counters by arguing, that while upon the filing of the claim in this court, he had not to that date received his right-to-sue letter, he nonetheless did receive his letter thereafter and did attached a copy to his memorandum contra plaintiffs motion to dismiss. Therefore, plaintiff contends that he has met any jurisdictional requirement set out by § 2000e–5(f)(1).

The Sixth Circuit has held that a plaintiff must establish as a prerequisite to suit that he has: (1) filed a timely charge of employment discrimination with the EEOC, (2) received and acted upon the Commission's statutory notice of the right-to-sue. *Parsons v. Yellow Freight Systems, Inc.,* 741 F.2d 871 (6th Cir.1984); citing: *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). In *Parsons* they state:

It is apparent form the allegations of the Complaint ... that the plaintiff has failed to properly invoke the Court's jurisdiction over the within Title VII action. As previously indicated, the plaintiff has

not alleged, and is, from all appearances, simply unable to allege: (i) that the claims comprising the instant action have been made the subject of a timely charge with the EEOC, or (ii) that the plaintiff has secured from the Commission the requisite right-to-sue notice. In view of these circumstances, which *quite clearly suggest the plaintiff has failed to resort to the administrative remedies* which are favored under the Act ... *Id.* at 873. (Emphasis Added).

Plaintiff has offered in response, the case of *Pinkard v. Pullman–Standard, A Division of Pullman, Inc.* 678 F.2d 1211 (5th Cir.1982). *Pinkard* held that jurisdiction was achieved by a plaintiff who filed a civil claim before receiving his right-to-sue letter. That Court held that receiving the right-to-sue letter was a condition precedent, not a jurisdiction prerequisite. *Id.* Utilizing the Supreme Court case of *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the *Pinkard* court found that any receipt of the Commission's letter was a condition precedent subject to equitable modification. *Id.* at 1217. Therefore, they held that the receipt of the right-to-sue letter subsequent to the commencement of the Title VII action, but while the action remained pending, satisfied the precondition necessary for a Title VII claim to be brought. *Id.* at 1219.

This Court agrees with the 5th Circuit, as well as the District Court for the Western District of Michigan in *Bradford v. General Telephone Co. of Michigan,* 618 F.Supp. 390 (D.C.Mich.1985), both holding that receipt of the right-to-sue letter is not jurisdictional, but a condition precedent to filing a Title VII claim. The purpose of receiving the Commission's notice is to ensure that the plaintiff has complied with the administrative remedies available before seeking court intervention. Even in *Parsons,* the Court's concern was that the evidence before it was void as to whether or not plaintiff had complied with the Title VII prerequisites of administrative action before filing a claim in court. Those concerns are not found here, inasmuch as plaintiff has received his right-to-sue letter, and by said

receipt, it is obvious that he did in fact comply with the requirements of first filing an EEOC claim. The *Zipes* decision can be interpreted in no other way than to allow for equitable modification as to the receipt of the Commission's letter, as long as the requirements of first seeking administrative relief have been met. Plaintiff received a right-to-sue letter, which he attached to his memo contra to the motion to dismiss. Plaintiff met the prerequisite of administrative action. Therefore, defendants' jurisdiction claim is hereby DENIED.

■ Defendants next claim that plaintiff has failed to establish a prima facie case of retaliatory discharge under Title VII. In order to establish a prima facie case of retaliatory discharge it must be shown:

> (1) that plaintiff was involved in a protected activity, (2) that he was subjected to an adverse employment decision by the employer, and (3) that a causal link exists between the two events.

*Yates v. Avco*, 819 F.2d 630 (6th Cir. 1987).

As to the first element of retaliatory discharge protection, there exists two different clauses known respectively as the "participation" clause, as well as the "opposition" clause. *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir.1978). The participation clause protects an individual who has participated directly in an E.E.O.C. claim, and who thereafter is unlawfully discharged. The opposition clause's purpose is to protect the employee who utilizes the tools provided by Congress to protect his rights. *Id.* at 695. It is not necessary that the practice opposed to be demonstrably unlawful; the opposition clause protection can be based upon a "reasonable belief" that the employer has engaged in an unlawful employment practice. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir.1983). The facts herein are indicative of the opposition clauses' protection. Plaintiff thus needs to establish that he reasonably believed ANATEC's policies and procedures were violative of protected rights. If plaintiff can meet this hurdle,

then he has established the first element of the prima facie analysis.

The third element needed to meet the prima facie test of retaliatory discharge requires a causal link analysis. *Yates, supra.* The 6th Circuit has held in determining whether a causal link exists, the court must look at the reasonable reliance by the employer on its articulated reason for its action. *Cooper v. City of North Olmstead*, 795 F.2d 1265 (6th Cir.1986). If on the record before the court, it was reasonable that the employer's action taken was done so in a manner consistent with what an employer in an equal situation would do given the facts that they had before them, then it would be reasonable for the employer's action. On the other hand, if the record does not reveal that it was reasonable to base the decision that was made by the employer on the evidence that was before the employer and subsequently supplied to the court, then a causal connection may be obtained. Therefore, plaintiff must meet the three requisites of *Yates* to establish a prima facie case. The second element is easily obtained by a subsequent discharge following the advocacy of a protected right. The Court will now address these issues *seriatim.*

Plaintiff alleges that he advocated on numerous occasions concerning ANATEC's policies and procedures regarding civil rights. Specifically, plaintiff claims that it was his direct involvement in the Laura Boden situation which brought about his termination. Plaintiff states that it was his continued advocacy within ANATEC that led his superiors to ultimately decide to terminate him.

Defendants counter by stating, that it was not plaintiff's advocacy for ANATEC employees which resulted in his termination; but instead, his direct threats made regarding individuals at ANATEC following their decision not to create a separate Customer Relations Division. Specifically, defendants' position is that plaintiff has not met the first and third elements required by *Yates;* therefore, they are entitled to summary judgment as a matter of law.

■ Plaintiff has met the three requisites needed to establish a prima facie case of retaliatory discharge. Plaintiff has cited to numerous instances where he allegedly was an advocate on behalf of employees who he felt were the subject of unfair treatment within ANATEC. Plaintiff cites to instances wherein he claims he either directly discussed a particular individual or event, or made inquiry into the policies and procedures employed by ANATEC. Plaintiff has indicated that he reasonably believed that he was advocating for better employment opportunities at ANATEC, and therefore, has for purposes of summary judgment met the first element of the *Yates* framework. Plaintiff has put forth more than a scintilla of evidence either within the deposition testimony filed or by reference to Mr. Weideman's memorandum concerning his discharge, to establish that on numerous occasions he did in fact question the policies and procedures at his place of employment. Whether or not plaintiff will ultimately prevail on the merits remains to be seen. But, for purposes of establishing at a minimum a prima facie first element, plaintiff has met that burden. Plaintiff has put forth evidence indicating that he reasonably believed that the policies used by ANATEC were discriminatory. Plaintiff has met the first test needed within *Yates*.

As to the second element required by *Yates*, plaintiff was in fact discharged some time after he advocated for various policy changes and on other employees behalf. Therefore, by the terms of the timing of his discharge, he meets the second element of the *Yates* test. The only element left is if the discharge and the opposition to the alleged discriminatory practices are causally related one to another.

In viewing the record as it stands before the Court, plaintiff has also met the third prong needed to establish a prima facie case. Defendants' own citation to *Cooper* helps to further substantiate this belief. *Cooper* requires the court to view the reasonableness of the employer's articulated reason for their action(s). Defendants cite to the alleged personal threat made by plaintiff to others within ANATEC as the sole basis for this action. Yet, the individual toward whom those alleged threats were first communicated has through her own deposition testimony contradicted and established genuine fact as to whether there was a threat at all. The Court's purpose in ruling upon a summary judgment is to view the evidence put forth and to see if a genuine of fact remains for trial. The credibility and factual disputes surrounding the scope and meaning of the conversation between plaintiff and Carol Sagun remains a genuine issue for trial and cannot be resolved by summary judgment. Therefore, whether or not it was reasonable for ANATEC to discharge plaintiff after he made the alleged threats to officials at ANATEC remains a genuine issue for trial. In like manner, since the Court cannot say for certain based upon the evidence it has before it that the discharge was reasonable, plaintiff too has met the third element of *Yates*. For purposes of establishing a causal connection between plaintiff's opposition and his discharge, a causal connection at this stage of the proceedings exists, granting plaintiff a prima facie case of retaliatory discharge. That being, defendants' motion as it relates to the prima facie test so needed to establish a Title VII is DENIED.

The third area of contention between the parties centers around the second and third elements of the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) test. Defendants argue that even if a prima facie case of retaliatory discharge is found, defendants have articulated a legitimate reason for their discharge, which plaintiff cannot find to be a pretext. *Id.* In *McDonnell Douglas,* the Supreme Court established a three part framework for deciding a Title VII case: (1) the plaintiff must establish a prima facie case, (2) the defendant must offer a legitimate, non-discriminatory reason for its actions; and (3) the plaintiff must establish that the defendant's allegedly legitimate, non-discriminatory reason was merely a pretext. *Id.* at 802–805, 93 S.Ct. at 1824–1826.

Defendants cite to many authorities in their motion for summary judgment, each showing those circumstances whereby a legitimate, non-discriminatory motive was found or where the plaintiff was unable to prove a pretext. Plaintiff in the alternative cites to the case of *Blalock v. Metal Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985) and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In *Blalock*, it was held that the *McDonnell Douglas* framework and the shifting of the burdens of production are inapplicable, where the plaintiff has presented evidence of direct discrimination. *Id.* Therefore, if in fact there is before the Court direct evidence of discrimination, then the three part test can be circumvented. If not, this Court must instead decide whether plaintiff has offered enough evidence creating a factual dispute to overcome summary judgment, as to whether defendants articulated reason(s) for their discharging plaintiff was legitimate, and non-discriminatory.

■ There is before the Court a factual issue as to whether or not defendants articulated reason for plaintiff's discharge was reasonable, legitimate, and non-discriminatory. There is not before the Court direct evidence of discrimination so as to be relieved of *McDonnell Douglas* as found in *Blalock*. While plaintiff has offered deposition testimony, along with the memorandum dated August 20, 1989 of Edward Weideman in support of their direct discrimination claim, said evidence of discrimination brings to the Court a factual dispute as to the true reason why plaintiff was discharged. That evidence does not support evidence of direct discrimination at this stage of the proceedings. Factual issues and credibility of the witnesses statements remains following a review of those pieces of evidence. Therefore, plaintiff has produced enough evidence to come within purview of *Anderson* and *Celotex*, but not enough to show an outright case of direct discrimination. Applying the *McDonnell Douglas* test, defendants herein have not shown a that no genuine issue of fact remains, nor that their actions were completely legitimate and non-discriminatory.

As before, the lead witness to which these allegedly threatening statements were originally made has recanted and contradicted her own assertions. Carol Sagun's credibility is still in issue, which cannot be resolved by summary judgment. Likewise, just what was meant by the conversation between Sagun and plaintiff is a factual issue which remains for trial. Defendants have cited to the allegedly threatening comments made by plaintiff as to their reason for his discharge. They claim that the record is clear that they were justified, with reasonable belief, legitimate concern and non-discriminatory motives in plaintiff's demise. This Court today cannot say that was the case. A factual issue remains for trial. That being, defendants' motion for summary judgment relating to the remainder of the Title VII claims is also DENIED.

Beyond the Title VII claim enumerated above, plaintiff has likewise alleged pendent state claims of slander, that plaintiff was not merely an employee at-will, and that plaintiff has suffered extreme emotional distress. The Court will now address each one of these claims individually.

Plaintiff alleges that following his termination, ANATEC officials slandered him by making knowingly false statements to others that he threatened the lives of company officials. Plaintiff argues that said comments made after his termination were done with malice and with actual knowledge of their falsity. Plaintiff therefore feels that he is entitled to damages for slander.

Defendants in the alternative argue that slander does not exist. Plaintiff cannot be deemed to be slandered, when truth is a complete defense. Defendants allege that plaintiff was terminated following his threats made to company officials. Truth being a complete defense to slander, defendants contend that they are entitled to summary judgment on this claim. In the alternative, defendants are afforded a qualified privilege for comments made which report incidents relating solely about an employer and employee. Further, plaintiff has nothing but hearsay to back up these

alleged slanderous comments, and hearsay is not admissible to overcome an otherwise proper motion for summary judgment. Therefore, defendants move for summary judgment as to any and all slander claims.

 Ohio Revised Code § 2739.01 provides for slander:

In an action for a libel or slander, it is sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff. If the allegation is denied, the plaintiff must prove the facts, showing that the defamatory matter was published or spoken of him. In such action, it is not necessary to set out any obscene word, but it is sufficient to state its import. Ohio Rev.Code Ann. (Page's 1981).

A statement is considered defamatory in Ohio if it is made falsely and maliciously with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession. *Katz v. Enzer*, 29 Ohio App.3d 118, 122, 504 N.E.2d 427 (Hamilton Co.1985); *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.*, 43 Ohio App.2d 105, 107, 334 N.E.2d 494 (Cuyahoga Co.1974). Ohio has recognized the applicability of a qualified privilege in defamation cases. *Smith v. Klein*, 23 Ohio App.3d 146, 148, 492 N.E.2d 852 (Cuyahoga Co.1985). A qualified or conditional privilege is a communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *Id.* at 149, 492 N.E.2d 852 citing: *Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975). The essential elements are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper manner and to proper parties only. *Id.* However, where the defamation is published to someone not within the qualified privilege or is done with actual malice, the privilege is lost. *Id.* If a defendant puts forth evidence indicating that his statements were a qualified privilege, then the plaintiff has the additional burden showing that the defendant exceeded the privilege. *Id.* Where defense in part relies upon qualified privilege arising from communications made in good faith concerning a matter in which individuals share a common interest or duty, proof of actual malice is required. *Id.* 29 Ohio App.3d at 120, 504 N.E.2d 427; citing: *Evely v. Carlon Co.*, 4 Ohio St.3d 163, 447 N.E.2d 1290 (1983). Finally, a qualified privilege is recognized between an employer and employee. *Id.*

 Plaintiff has submitted enough evidence to create a genuine issue of fact surrounding a defamation claim. Defendants have not proffered the requisite evidence to show that they are entitled to a qualified privilege at this juncture. Inherent within those aforementioned cases dealing with qualified privilege is the essential element of good faith. One must establish a good faith basis as to the subject matter communicated. Likewise, said privilege is lost if the communicator acted with actual malice and/or publishes the communication to one not entitled to the privilege. The subjective good faith is factual herein, inasmuch as it has already been established that there remains as fact for trial the issue of what was communicated to Carol Sagun from the plaintiff. Likewise, factually for trial is the issue of after receipt of said information, was it reasonable and legitimate to terminate the plaintiff. This Court for trial is concerned with whether or not defendants can offer a legitimate nondiscriminatory reason for their discharging of the plaintiff, and whether or not plaintiff after receipt of that information will be able to show that their stated reasons were in fact a pretext. Those two issues remain as fact for the trial, and as such, so must the issue of good faith which would allow for a qualified privilege analysis, or a complete defense if in fact those statements were true. Before this Court lies the critical question as to the content and context of the communication between Carol Sagun and the plaintiff. Only after those factual contentions are cleared away, can this Court decide to what extent if any

defendants were legitimate in their decision to terminate the plaintiff and to what extent there is any showing of a pretext. Therefore, factually those issues remain for defamation as well, because if in fact it is established that plaintiff's termination was not legitimate or not based upon a reasonable belief as to ANATEC officials' safety, defendants then by communicating said information surrounding the discharge to others may have in fact defamed plaintiff. But said position cannot be addressed at this time. Before the Court is factual information which overcomes defendants' motion for summary judgment. Said information is not hearsay, for in defamation cases it is deemed to be either non-hearsay by definition, i.e. the statement is not offered for the truth of the matter asserted, but instead to establish that in fact it was communicated; or, herein the statements could readily fall into an 801(d)(2)(D) exemption. Therefore, defendants' motion as it relates to the claims of defamation is DENIED.

Plaintiff contends that his employment status was more than that of an employee at will. According to plaintiff, both by verbal representations made before he came to ANATEC and by written representations found within various employee handbooks, his status with the company was one for an indefinite duration, terminable only for cause. Defendants counter by asserting that at no time was plaintiff ever given oral representations amounting to promissory estoppel. Likewise, nothing contained within their handbooks could create a contract for more than at-will, and plaintiff's termination was for threatening the safety of company officials.

 Under Ohio law, an employment relationship, absent an agreement to the contrary, is regarded as employment at-will which can be terminated at any time by the employer. *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976). The employment-at-will relationship may be altered by the terms of an employee handbook, by other express oral or written promises, or by the doctrine of promissory estoppel. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). In order for an employment manual to be considered a contract, there must be a "meeting of the minds" between the parties. *Cohen & Company, CPAs v. Messina, CPA*, 24 Ohio App.3d 22, 492 N.E.2d 867 (1985); *Turner v. SPS Technologies, Inc.*, Slip Op. No. 51945, 1987 WL 11967, Cuyahoga County Court of Appeals, (June 4, 1987). The Ohio courts have further held that where the employee manual lists reasons for discharge which do not purport to be exclusive, the manuals do not create an agreement not to terminate employment for any reason not included in the list. *See e.g., Arthur v. Honda of America MFG., Inc.*, Slip Op. No. 14–86–13, 1987 WL 17253, Union County Court of Appeals (Sept. 18, 1987); *Czerkas v. United States Steel Corp.*, Slip Op. No. 3823, 1985 WL 3639, Lorain County Court of Appeals (Nov. 13, 1985); *West v. Roadway Express, Inc.*, 1982 WL 4975, 8 Ohio Bar Rep. 155 (App.1982). Finally, promissory estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. *Hedrick v. Center for Comprehensive Alcoholism Treatment, et al.*, 7 Ohio App.3d 211, 454 N.E.2d 1343 (Hamilton County, 1982), citing: *London & Lancashire Indemnity Co. of America v. Fairbanks Steam Shovel Co.*, 112 Ohio St. 136, 147 N.E. 329 (1925). Moreover, promissory estoppel is available to employees who have relied to their detriment on representations by the employer and the employer should have known or reasonably expected its representation(s) to be relied upon by the employee. *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 515 N.E.2d 632, 633 (Cuyahoga County, 1986).

 Plaintiff has not met his burden to overcome summary judgment showing that he is anything more than an employee-at-will. Plaintiff cannot be said to have relied to his detriment on any oral representa-

tions of employment for an indefinite duration. Plaintiff is unable to produce more than conclusory allegations that he was told that he was one of the "chosen few" who would come to Columbus. In the alternative, even if plaintiff was told such a statement, any puffing that may have been used to induce plaintiff to come to Columbus cannot be said to create a promise of indefinite duration. He may in fact have been one of a few selected for transfer, but that in and of itself does not take an otherwise contract at-will situation and turn it into indefinite employment. Therefore, defendants' summary judgement as it relates to promissory estoppel is GRANTED.

█ Plaintiff likewise cannot establish and show that there exists any genuine issue of fact surrounding the manuals provided. Plaintiff contends that the company's declarations of employment, recruitment practices, responding to employee concerns, the employees responsibility to bring problems to the attention of their supervisors, and the like, all create a contract for continued duration. Likewise, plaintiff argues that in the publication entitled "You and Anaconda" his discharge could only be based upon cause. Plaintiff states that he was unable to explain or clarify his position, and was not afforded the ability to hear from his supervisors what grounds were actually being used in deciding his termination. After reviewing these various sections contained within those publications, this Court cannot find that a contract beyond that of at-will was created.

> "You and Anaconda" at page 19 states: Discharge–It sometimes becomes necessary to discharge a salaried employee. Some situations that would make a discharge for cause necessary are excessive tardiness or absenteeism; unsatisfactory job performance; willful falsification of any kind; illegal or other improper activity. If you are presented with any of these charges, you will be given an opportunity to state your case and defend your position.

However, contained within the Supervisor's Handbook are two sections which clearly establish that "for cause" may not always be the case. Under Section H, Rules of Conduct, there is a listing of various actions which are not deemed appropriate behavior. They state: "in treating infractions, the company is the *sole judge* of appropriate disciplinary action. (Emphasis Added) ... [T]his list is not to be considered as complete." Further in Section J, it reads: "The program for discharge does not apply to discharge for illegal or other improper behavior, which may be immediate". Based upon these contradictory sections contained within the publications that plaintiff received, it is not plausible to say that plaintiff relied upon these representations to his detriment thereby creating any form of contract for indefinite duration or one that required cause for termination. ·The Supervisor's Handbook would appear to the Court to be an important source that plaintiff would have considered. It would have been consulted along with the "You and Anaconda" publication, which the former clearly on its face refers to areas for disciplinary action, without any reference to just cause or a pre-termination hearing. Nothing can be more explicit than the phrase, "which may be immediate" or that these infractions were not considered as "complete". Based upon these two sections alone, it would not possible for one to believe that these publications had created a contract for employment beyond a contract-at-will. Therefore, based upon plaintiff's inability to prove a genuine issue of fact surrounding the employment at-will situation, and based upon the aforementioned cases establishing that where the manuals do not claim to list all of the reasons for a discharge, a discharge may be had without enumerating a reason, which does not violate the at-will status, defendants' motion for summary judgment as to the at-will status of the contract is GRANTED.

Plaintiff's final area of contention centers around a claim for intentional infliction of emotional distress. Plaintiff claims that as a result of his termination, he suffered a great deal of weight loss and his diabetes worsened. Plaintiff seeks One–Hundred

and Fifty Thousand (150,000) dollars in damages as a result thereof.

 In order to recover damages for intentional infliction of emotional distress, four elements must be proven:

(a) That the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to plaintiff;

(b) That the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community;

(c) That the actor's actions were the proximate cause of the plaintiff's psychic injury; and,

(d) That the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98 (Cuyahoga County, 1983). Plaintiff has not met his burden to prove by more than a scintilla of evidence that he is entitled to relief hereunder. Plaintiff has the burden to come forward with more than mere conclusory allegations, to overcome a motion for summary judgment. Plaintiff has not shown beyond his own conclusions drawn, that he suffered ill-health following his termination. Further, plaintiff has not met the requisites so needed to establish intentional infliction of emotional distress, in that he has not shown that beyond making statements concerning the basis of his discharge, that said statements were intended to cause emotional distress, that they knew or should have known that his ill health would occur, or that conduct was extreme and outrageous to a point that it is utterly intolerable. There is before the Court no evidence to show that defendants' actions are the cause in fact of his ill-health of late, let alone that their actions were the proximate cause thereof. Finally, plaintiff has offered no evidence that he has suffered any mental anguish and that defendants' actions were such that no reasonable person would be expected to endure such pain. Therefore, plaintiff has come far short of

his *Anderson* and *Celotex* guidelines, and any claim for emotional distress is denied and defendants' motion relating to intentional infliction of emotional distress is hereby GRANTED.

Wherefore, upon being duly advised, IT IS THE ORDER OF THIS COURT THAT:

1) Defendants' motion for summary judgment as it relates to jurisdiction is DENIED.

2) Defendants' motion pertaining to a prima facie case of retaliatory discharge is DENIED.

3) Defendants' motion for summary judgment concerning remaining elements of the *McDonnell Douglas* test is DENIED.

4) Defendants' motion for the claims made in defamation is DENIED.

5) Defendants' motion pertaining to the at-will provisions of the contract is GRANTED.

6) Defendants' motion for the claims arising on intentional infliction of emotional distress is GRANTED.

IT IS SO ORDERED.